1810.

Ringgold
vs
Tyson.

vs. *Batty*, Ibid 264. On the *second point*, they cited *Peake's Evid.* 107; and *Shaw* vs. *Markham, Peake's N. P.* 165.

On the *second* bill of exceptions, they contended, 1. That parol evidence that notice in writing had been given to the defendant, ought not to have been admitted, without a previous notice to the defendant to produce such written notice.

2. That notices of the nonacceptance, and nonpayment of the bill of exchange, were not given by the plaintiff to the defendant, but by a third person. On this point they cited *Tindall* vs. *Brown*, 1 *T. R.* 167; and *Ex Parte Barclay*, 7 *Ves.* 597.

*Key, Harper,* and *T. Buchanan,* for the Appellee, as to the defects in the *first count* in the declaration, referred to the act of 1809, *ch.* 153, *s.* 2.

On the *first* bill of exceptions, they cited *Peake's Evid.* 97, and *Chitty on Bills,* 239, 240.

On the *second* bill of exceptions, they cited *Chitty on Bills,* 239, 240. *Stedman* vs. *Gooch,* 1 *Esp. Rep.* 5. *Kufh* vs. *Weston,* 3 *Esp. Rep.* 54. *Saunderson* vs. *Judge,* 2 *H. Blk. Rep.* 509. *Chapman* vs. *Lipscombe,* 1 *Johns. Rep.* 296; and *Gotlieb* vs. *Danvers,* 1 *Esp. Rep.* 455.

On the *third* bill of exceptions, they referred to *Wood* vs. *Repold, (ante* 125.)

THE COURT agreed with the County Court in the opinions given in the several bills of exceptions.

JUDGMENT AFFIRMED.

---

DECEMBER.

## RINGGOLD vs. TYSON.

In *assumpsit* on a promissory note by the endorsee against the drawer, the payee is a competent witness to prove the note had been paid to the plaintiff

He is also competent to prove that the note was given on a usurious consideration,

The endorsee or holder of a promissory note cannot recover in his own name on an endorsement in blank

APPEAL from *Washington* County Court, from a judgment rendered in favour of the plaintiff in that court, (the present appellee,) in an action of *assumpsit* on a promissory note, drawn by the defendant, (the appellant,) on the 5th of May 1804, payable to *S. Wilmer,* or order, for $1000, and by *Wilmer* endorsed to the plaintiff. The declaration also contained counts for money lent and advanced, for money had and received, and for money laid out, expended and paid. Plea, the general issue.

1. At the trial in March 1807, the plaintiff read in evidence the promissory note declared on, and which was admitted to have been drawn and signed by the defendant, and endorsed by *Wilmer*. [The endorsement by *Wilmer* was in blank.] The defendant then read in evidence a release, dated the 26th of March 1807, from himself to *Wilmer*, "of and from all claims, debts, dues and demands, of every nature and kind whatsoever," &c. which was admitted by the plaintiff to be duly executed, signed, sealed and delivered, by the defendant to *Wilmer*. And also a release, dated the same day from *Wilmer* to the defendant, "of and from all manner of debts, dues and demands, contracts and agreements, of every nature and kind existing between them," &c. This release the plaintiff also admitted was duly executed, signed, sealed and delivered, by *Wilmer* to the defendant. The defendant then produced *Wilmer*, and offered to prove to the jury by him, that on or about the 10th of July 1804, he as the agent of the defendant, paid the amount of the note to the plaintiff, to whom the same had been endorsed by *Wilmer*. But the court, [*Clagett* and *Shriver*, A. J.] rejected the witness as incompetent to prove those facts. The defendant excepted.

2. The defendant then offered to prove by *Wilmer*, a conversation with the plaintiff, in which he admitted that he was not entitled to recover in this suit any thing from the defendant upon this particular note, the same having been paid. This evidence the court also refused to let him give. The defendant then prayed the court to direct the jury, that the plaintiff was not entitled to recover. This direction the court refused to give. The defendant excepted.

3. The defendant then offered to prove by *Wilmer*, that he the defendant drew the note, upon which this suit is brought, payable to him, *Wilmer*, for the purpose of raising money thereon for the use of him, the defendant, and without any value passing from *Wilmer* to the defendant. That *Wilmer* called upon the plaintiff with the note, and informed him that he was the agent of the defendant, and that he wanted to borrow money for the defendant upon the note. That the plaintiff did thereupon discount the note at a discount upon the sum therein expressed, at the

1810.

Ringgold
vs
Tyson

rate of three *per centum per* month, and took and received from *Wilmer*, as the agent of the defendant, the note at the price of $940, which sum, and no more, the plaintiff paid to *Wilmer* for the defendant, as and for the price of the note. That in consequence of the money so paid, *Wilmer* endorsed and delivered the note to the plaintiff. But the court refused to permit *Wilmer* to be sworn to the jury to prove these facts, or any of them, and rejected him as an incompetent witness The defendant excepted. Verdict and judgment for the plaintiff, and the defendant appealed to this court.

This cause was argued before CHASE, Ch. J. GANTT, and EARLE, J.—BUCHANAN, J. having been concerned as counsel did not sit. The questions which arose in this case had been argued in this court on the *Eastern Shore* in the case of *Lloyd vs. Tyson*, before POLK, BUCHANAN, and GANTT, J.—EARLE, J. having been concerned as counsel did sit in that case.—NICHOLSON, J. did not sit in either case.

*Martin, Key*, and *T. Buchanan*, for the Appellant, stated, that the *first* and *third* bills of exceptions presented two questions—1. Whether or not a payee of a promissory note was a competent witness, in an action by the holder against the drawer to prove payment—mutual releases having been executed to each other by the payee and drawer? And 2. Whether or not he was competent to prove that the note was void in its creation, as given on a usurious consideration? To show that he was a competent witness, they cited *Clarke vs. Shee & Johnson, Cowp.* 199. *Peake's Evid.* 161, 144, 180, 181. *Charrington vs. Milner, Peake's N. P.* 6. *Phetheon vs. Whitmore, Ibid* 40. *Humphrey vs. Moxon, Ibid* 52. *Adams vs. Lingard, Ibid* 117. *Rich vs. Topping*, 1 *Esp. Rep.* 176. *Jordaine vs. Lashbrooke*, 7 *T. R.* 601. *Birt vs. Kershaw*, 2 *East*, 458. 1 *Esp. Dig.* 259. *Staples vs. Oakes*, 1 *Esp. Rep.* 382. *Chitty on Bills*, 282, 283, 284, 52, 205. *Dickinson vs. Prentice*, 4 *Esp. Rep.* 32. *Shuttleworth vs. Stephens*, 1 *Campb.* 407, (and note.) *Byd on Bills*, 283. *Brown vs. Davies*, 3 *T. R.* 81. *Lowe vs. Waller*, Doug. 736. *Abrahams, qui tam, vs. Bunn*, 4 *Burr.* 2251. *Baker vs. Arnold*, 1 *Caine's Rep.* 275, 276. *Twambly vs. Henley*, 4 *Mass. Rep.* 442. *Bliss vs. Thompson, Ibid* 491. *Bosanquet vs. Dashwood, Ca.*

*temp. Talb.* 38; and *Wilson vs. Lenox*, 1 *Cranch*, 201, *(note.)*

On the *second* bill of exceptions, they stated the question to be, whether an endorsee could bring an action in his own name on a promissory note endorsed in blank by the payee? To show that he could not, they cited *Clark vs. Pigot*, 1 *Salk.* 126. *Lucas vs. Haynes*, 2 *Ld. Raym.* 871. *Bull. N. P.* 275, 278. 1 *Esp. Dig.* 28. *Chitty on Bills*, 117; and *Gray & Biddle vs. Wood*, 2 *Harr. & Johns.* 328.

*W. Dorsey*, *Harper*, and *Winder*, for the Appellee, on the *first* and *third* bills of exceptions, cited *Walton vs. Shelly*, 1 *T. R.* 296. *Bent vs. Baker*, 3 *T. Rep.* 27. *Charrington vs Milner*, *Peake's N. P.* 6. *Phetheon vs. Whitmore*, *Ibid* 40. *Humphrey vs. Moxon*, *Ibid* 52. *Adams vs Lengard*, *Ibid* 117. *Rich vs. Topping*, 1 *Esp. Rep.* 176. *Hart vs. M'Intosh*, *Ibid* 298. *Jordaine vs Lashbrocke*, 7 *T. R.* 601. *Caldwell vs. Bull, (a)*. *M'Cullough vs Houston*, 1 *Dall. Rep* 441. *Stille vs. Lynch*, 2 *Dall. Rep* 194. *Baker vs. Arnold*, 1 *Caine's Rep.* 258. *Winton vs. Saidler*, 3 *Johns. Cas.* 185. *Coleman vs Wise*, 2 *Johns. Rep.* 165; and *Churchill vs. Suter*, 4 *Mass Rep* 156.

CHASE, Ch. J. In this case, which is a suit brought by the endorsee of a negotiable promissory note against the

*(a)* The case here referred to of *Caldwell vs. Bull*, in this court at December term 1809, was an appeal from *Baltimore* County Court. It was an action of *assumpsit*, for goods sold and delivered, and the general issue was pleaded. At the trial the defendant, (now appellee,) offered in evidence by way of set off, a promissory note drawn by the plaintiff, (the appellant,) in favour of *William Hays*, and by him endorsed to the defendant. The plaintiff then offered to prove by *Hays*, that while the note remained in his possession, and before he endorsed it to the defendant, he erased from the body of the note the name *"William Hays,"* and in this defaced state delivered the note to one *Barklie*, a broker, and requested him to negotiate it by selling it, and that *Barklie* did offer it for sale, but was unable to sell it. That *Hays* afterwards inserted the name *"William Hays"* in the body of the note, and endorsed it to the defendant, to whom he communicated the circumstance of the erasure, before and at the time he endorsed the note. The defendant objected to the proof of the erasure by *Hays*, on the ground that it might tend to invalidate the note; and that *Hays* was an incompetent witness to invalidate an instrument to which he had given credit by endorsing it, and passing it away. And the court, [*Nicholson*, Ch. J. and *Hollingsworth*, A. J.] sustained the objection, and directed the jury, that *Hays* was an incompetent witness to prove the erasure. The plaintiff excepted, and the verdict and judgment being against him, he appealed to this court, where the judgment was *affirmed by consent*.

drawer, three questions on bills of exceptions are brought before this court for their decision.

The *first* question is, whether the endorsor can be received as a witness to prove payment of the money to the plaintiff?

The *second* question is, whether he is a competent witness to prove the note was given on an usurious consideration?

The *third* question is, whether the endorsee of a promissory note can recover in his own name on an endorsement in blank?

The two first questions are of the greatest importance, and have claimed the particular attention of the court, because on our judgment depends one of the principal rules of evidence which will be adhered to or relaxed accordingly, in this state, in future.

These questions have been ably discussed by the counsel for the parties, and all the cases and law relating to them have been brought before the court, and with great strength of argument observed on.

The objection to the endorsor being received as a witness, is grounded on the rule laid down in *Walton vs. Shelly*, that no person shall be admitted as a witness to impeach or invalidate an instrument or writing which he has signed and given credit to.

This is acknowledged to be a rule of policy, and adopted by the court in that case in conformity to a maxim of the civil law, *nemo allegans suam turpitudinem est audiendus*. This as. a rule of evidence was unknown in the common law courts in *England* prior to that case.

The rule that prevailed antecedent to that time, and as a rule of the common law, is, that every person not interested in the event of the suit was admissible as a witness.

It is certain this rule was deviated from, and I think infringed by the decision of the court in that case; and the evils resulting from it as a general rule pressed so hard upon the court, and involved them in so many difficulties, by interfering with the decisions of the courts in other cases, as to induce them to modify it; and in three years afterwards they restricted it to the case of negotiable instruments; and after relaxing it from time to time, they exploded it in the case of *Jordain vs Lashbrooke*, 7 *T. R.* 601, and re-established the rule which prevailed according to the principles of the common law.

1810.
Ringgold
vs
Tyler

Unquestionably the rule in *Walton vs. Shelly* cannot prevail as a general rule, because in the cases of wills, deeds and bonds, the witnesses to them may be examined to impeach their validity; in the first case to prove the insanity of the testator, in the second case to prove the deed was not sealed or delivered, and in the third case to prove the bond was given on an usurious consideration—or that the obligor was unlettered, and that the bond was not read or was misread to him. The witnesses in these cases, by their attestations, held out there was no legal objection to them, and that they will prove those requisites which are essential to their validity.

The decision in *Walton vs Shelly* is overruled by the court in *Jordaine vs. Lashbrooke*, and the law considered as settled in *England*. The cases at *nisi prius* conformed to *Walton vs. Shelly*, while it remained the ruling decision, although the courts indicated an inclination to modify and relax the restriction. Lord *Mansfield* said, the rule is founded in policy, and on that ground it was adopted. It is the duty and province of the court *dicere non legem*, and if the rule was not known at that time as a rule of evidence at the common law, the court's opinion as to its policy would not warrant them in the adoption of it.

An accomplice is a legal and competent witness against the principal, and in giving testimony must declare his own turpitude and participation in the crime, which is a circumstance that impeaches his credit. The maxim of the civil law, when considered with reference to the common law, may be understood as affecting the credit of the witness, and declaring that he stands in that predicament which renders his testimony suspicious, and that he ought to be heard with caution.

At one time an underwriter on a policy, in a suit against another underwriter on the same policy, was held to be an incompetent witness, and rejected from the supposed bias on his mind resulting from a community or similarity of interest. That doctrine has been exploded as a deviation from, or infringement of, the common law rule of evidence, that every person who is not interested in the event of the suit is a competent witness. An heir at law is admitted as a witness in a suit brought by his ancestor, relating to the bounds of his land, notwithstanding the bias on his mind from the expectation of his inheriting the land. All

these cases indicate plainly, and recognize the rule; that a person not interested in the event of the suit is a competent witness, and cannot be incapacitated by the situation in which he stands, from whence a bias on his mind is inferrable.

It is the peculiar and exclusive right and province of the jury to decide on the credit of witnesses, and the court cannot declare them incompetent, from any conjectural influence on their minds inclining them to favour one party more than the other; the jury, in forming their opinion, will consider all circumstances attending the witness in giving his testimony.

The common law is part of the law of *Maryland*, and cannot be abrogated or impaired by any principle or maxim of civil law. The rule of evidence, so often recurred to, is a rule established by the common law, and was in full force and operation in this state, at the time of the decision in *Walton vs. Shelly*, which introduced the maxim of the civil law, as an exception to that rule, on the ground of policy.

That decision has been the ground of the judgments in the courts of the states, and their decisions must rest on that authority, and cannot be entitled to more weight.

The maxim of the civil law may be considered as confined to the parties, and was so considered by the judges, (*Gross* and *Lawrence.*)

A plaintiff, whose action arises *ex turpi causa*, shall not be heard in alleging his own turpitude in support of his action against a *particeps criminis*.

To illustrate the position, A promises B a sum of money if he will grant him an office which concerns the administration of justice, or procure it to be granted, and the office is obtained, and A refuses to pay the money—B cannot recover it. So if A gives B a sum of money to procure him an office, and B so expends the money, and the office is not obtained, A cannot recover the money of B, or the person to whom it was paid.

So in the case of simony, where A promises to pay B a sum of money if he will procure him to be presented and instituted to a chapel, which was a donative in the King's gift; and B does procure him to be thus presented and instituted, B cannot recover the money of A.

In support of such actions the plaintiffs cannot be heard because of the illegality and turpitude of the consideration.

As to the *third* question. The legal operation of an endorsement in blank, in cases in which the sum is filled up in the bill, confers a right in the holder to consider it as a transfer to himself, or an authority to receive the money from the drawee, for the use of the endorsor, and he makes his election accordingly, by filling it up as a transfer or authority; and as it has not been filled up as a transfer in this case, the plaintiff below cannot support the action.

POLK and BUCHANAN, J. concurred
GANTT, J. dissented.

EARLE, J. I concur in the judgment of the court upon the *two first* bills of exceptions in this cause.

If the endorsee was not a competent witness for all purposes, it must be acknowledged he was for some. He might have been sworn to prove that the note was paid by *Ringgold* to *Tyson* after the endorsement of it, and no solid objection could have been raised to his being permitted to state, that as the agent of *Ringgold* he made the payment.

A blank endorsement of itself transfers no interest in a bill of exchange or promissory note. Independent of the authorities referred to by the counsel of the appellant upon this point, a cause, lately determined in the court of appeals on the eastern shore, concludes the question. It was the action of *Joseph Wood*, and *Elizabeth* his wife, for the use of *Benjamin Sluyter*, against *Gray & Biddle*. It originated in *Cecil* county court, on a promissory note passed to the wife while sole, and by her endorsed in blank to *Sluyter*, whose pleasure it was to use the names of the husband and wife in the prosecution of his action. At the trial the defendants offered to prove, that value passed from *Sluyter* at the time of the endorsement, and was the consideration of it; and meant to contend, that the property in the note was transferred, and that the suit ought to have been in the name of *Sluyter*, as endorsee. But the court held, that the title to the note was not assigned by the blank endorsement; and the rejection of the testimony having produced a bill of exceptions, their judgment was revised and affirmed in this court. 2 *Harr. & Johns.* 328.

In the *third* bill of exceptions in the record, a more serious point is presented for consideration, and in deciding

1810.
Ringgold
vs
Tyson

it, I must *also* beg leave to dissent from the judgment pronounced by the court.   I am for uniting with the courts of judicature in the commercial states of *Massachusetts, New York* and *Pennsylvania,* in giving stability to a legal principle that will restrain men from invalidating negotiable paper, to the credit and currency of which they have contributed by the endorsement of their names; as well for the sake of preserving within the union, a uniformity in the adjudication of great mercantile questions, as because I deem the principles of the case of *Walton vs. Shelly,* the law of this state.   It has been adjudicated, it is true, since the establishment of our independence, and in this view, it is not a binding authority in our courts of justice; but it unquestionably contains a recognition of the principle contended for, as a principle well understood in King's Bench in the year 1786, and perfectly familiar to the learned in the profession of the law at that period.   Lord *Mansfield,* and the other judges, who sat in the cause, and particularly Judge *Buller,* treated the rule, "that a party to a negotiable instrument shall not be received as a witness to invalidate it," as a known and long settled general rule of law; and the counsel, who argued in behalf of the plaintiff and defendant, on the one hand asserted, and on the other admitted, the existence and propriety of the principle, and only differed about the application of it to the subject then under discussion.   My deduction from the report of this case is, that the rule in question was established long anterior to 1786, and this opinion seems to receive strength from considering the case of *Abrams vs Bunn,* decided about the year 1768, where the rule is glanced at, if not recognized, by the judge, in stating the reasons of the judgment of the court.   Whether this case is the law of *Great Britain* at this day, is a question which need not be inquired into.   For it is certain that general principles, confessedly a part of the common law at the time of our revolutionary war, cannot be affected or altered by the subsequent decisions of foreign tribunals.   But if I was to hazard an opinion on the question, I should say that *Walton vs. Shelly* is still authority in *England. Jourdaine vs Lashbrooke* contradicts it; but it cannot be concealed, that the competency of witnesses was by that decision enlarged, to prevent evasions of a statute that materially affected the revenue of the kingdom; and it is to be remarked, that the

1810.

Ringgold
vs
Tyson

case itself has never received the sanction of the supreme appellate jurisdictions of that country. When *Hinton vs. Saidler* was determined in *New York* in the year 1802, (it was the first time the point occurred in that state,) it is impossible to suppose the judges were unapprized of *Jourdaine vs. Lashbrooke;* and yet we find them acknowledging the principles of *Walton vs. Shelly* in their fullest extent. They must have proceeded upon the ground that the latter case, from the peculiarity of its circumstances, did not unsettle the authority of the former, or, as I think on this occasion, they must have believed, that *Walton vs. Shelly* refers to rules and principles which existed long antecedent to the controversy between those parties.

The case now before the court falls within the reason of *Walton vs. Shelly,* and according to my judgment ought to be decided by it, although there is nothing feature in the facts which distinguishes it in some degree from that authority, and from almost all the cases determined upon the same subject. It was not proposed to prove by *Warner,* the endorsee, that the note was given upon an illegal contract, and therefore void *ab initio;* but supposing it was a valid instrument, he was offered as an evidence to prove the illegality of the consideration upon which he transferred it to the endorsee. The cause of action itself was not to be impeached; but as the suit could not be sustained without the aid of the endorsement, a recovery was to be barred by showing it to be a nullity. The admission of the testimony thus putting it in the power of the witness, not merely to destroy a paper to which he had given credit by his name, but to abrogate his own act of endorsement, and thereby in effect release the defendant from a debt which, from any thing that appears to the contrary, is *bona fide* due and owing from him.

I am of opinion, that the judgment of the court below, in the *third* bill of exceptions, ought to be affirmed.

JUDGMENT REVERSED.